UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JASON B. PERKINS,

          Plaintiff,

v.

CITY OF MODESTO, et al.,

          Defendants.

Case No. 1:19-cv-00126-LJO-EPG

**ORDER:**

1. **GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL;**

2. **FINDING SPOLIATION IN RELATION TO CELL PHONE ESI;**

3. **DENYING PLAINTIFF'S MOTION TO REVOKE STIPULATED PROTECTIVE ORDERS;**

4. **OVERRULING DEFENDANT'S OBJECTIONS REGARDING PUBLIC DISCLOSURE OF OFFICER PERSONNEL AND IA FILES WITH LEAVE TO PROPOSE REDACTIONS;**

5. **GRANTING PLAINTIFF'S MOTION FOR EXPENSES; AND**

6. **DENYING PLAINTIFF'S MOTION FOR GENERAL SANCTIONS.**

(ECF Nos. 44, 49)

      Pending before the Court is Plaintiff's motion to compel and various other discovery motions. (ECF Nos. 44, 49). The Court finds the motions appropriate for decision on the record, without oral argument, pursuant to Local Rule 230(g). The Court grants in part Plaintiff's motion to compel, finds spoliation in relation to the cell phone ESI, denies Plaintiff's motion to revoke the stipulated protective orders, overrules Defendants' objection to public disclosure of police

1

personnel files and internal affairs investigation ("IA") files, grants Plaintiff's motion for expenses, and denies Plaintiff's motion for general sanctions. As to the overruling of Defendants' objection to public disclosure of police personnel and IA files, the Court grants Defendants leave to file a motion seeking to keep specific officer personnel and IA files confidential and/or proposing redactions to such files prior to public disclosure and orders the parties to maintain the confidentiality of such files pending resolution of such motion.

In ruling on the pending motions, the Court declines to consider arguments and information provided by the Parties in the non-compliant, 148-page joint statement of discovery dispute and attachments thereto, except as to the issue of spoliation. (*See* ECF Nos. 46, 47.)

## I.     BACKGROUND

### A.     Allegations of Amended Complaint

Plaintiff filed this civil rights action on January 29, 2019 (ECF No. 1) and filed an amended complaint on June 13, 2019 (ECF No. 22). The amended complaint alleges the following:

On November 6, 2017, Plaintiff drove his significant other, Shannon Agnitsch, to the bank, and waited in his vehicle, sitting in the driver's seat, in the bank's parking lot while Ms. Agnitsch entered the bank. Plaintiff's vehicle was approached by Defendants Jerry J. Ramar and Ryan Olson, on-duty Modesto Police Department ("MPD") police officers. Plaintiff was not aware that these officers had approached his vehicle. Defendant Ramar unholstered and fired his MPD-issued firearm at Plaintiff without warning and without provocation, shooting at Plaintiff and Plaintiff's vehicle. Ramar shot at Plaintiff approximately six times, including in the face, chest, left arm, and left shoulder. Defendant Ryan Olson stood by as Ramar shot Plaintiff, without protesting or intervening, despite the opportunity to do so.

Plaintiff required life-saving medical treatment at the scene of the shooting and was transported to the hospital for further life-saving treatment, including several surgeries. Plaintiff remained in critical condition for two weeks following the shooting. Plaintiff still has three bullets and/or metal jackets lodged inside his body and has been advised the removal of these would be dangerous. Plaintiff has also undergone two additional surgeries since the shooting and expects

that at least a few more surgeries will be needed in the future. His resulting injuries have left him with paralysis in his left hand, right arm, and face.

On June 28, 2018, Plaintiff submitted a citizen complaint form to Defendant Modesto Police Department, alleging misconduct in connection with the November 6, 2017, officer-involved shooting of Plaintiff. On December 18, 2018, the MPD Shooting Review Board, concluded that Defendant Ramar's discharge of his firearm against Plaintiff was "within policy," and, as a result that the allegations in Plaintiff's citizen complaint form were "Unfounded."

On January 29, 2019, Plaintiff filed this action, naming as defendants the City of Modesto, the Modesto Police Department, Galen L. Carroll, Jerry J. Ramar, and Ryan Olson. (ECF No. 1.) Plaintiff brings claims for use of unreasonable force in violation of the Fourth and Fourteenth Amendments of the U.S. Constitution; and California state law claims of unreasonable force, assault and battery, intentional infliction of emotional distress, negligence, and violation of the Bane Act.

On March 11, 2019, Defendant Ramar resigned from the MPD to accept a promotional lieutenant-rank position with the Oakdale Police Department. On May 9, 2019, more than four months after the present action was filed, MPD sent Plaintiff correspondence informing him that, "as a result of [Ramar's] resignation this complaint has been closed," pursuant to the MPD's Citizen Complaint Policy, which states, "A complaint is considered 'Closed' when an employee resigns his/her employment prior to the completion of the investigation."

**B. Stipulated Protective Orders**

On August 6, 2019, the Parties filed their first stipulation for a protective order (ECF No. 28), and the Court entered the first stipulated protective order on August 6, 2019 (ECF No. 29). On September 9, 2019, the parties file a second stipulation for a protective order (ECF No. 32) and the Court entered the second stipulated protective order on September 10, 2019 (ECF No. 33). In both the first and second stipulated protective order, Plaintiff specified that he was not waiving, forfeiting, or abandoning "his contention that Defendants failed timely and appropriately to move for a protective order under Fed. R. Civ. P. 26(c)." (ECF No. 29 at 3 n.1; ECF No. 33 at 4 n.1.)

### C. **Discovery Disputes**

In November 2019, the parties informed the Court that they had a discovery dispute and requested that the Court set an informal discovery dispute conference. The Court held the requested informal discovery dispute conference on November 21, 2019, and granted Plaintiff leave to file a motion to compel and/or for sanctions based on any issue raised in the informal discovery dispute letters submitted to the Court on November 20, 2019, as well as any issues discussed during the informal discovery dispute conference. (*See* ECF No. 41.) The Court also set a hearing for January 24, 2020, for Plaintiff's anticipated motion to compel. (*Id.*)

On January 3, 2020, Plaintiff filed his motion seeking to compel discovery and raising various other discovery issues (ECF No. 44). On January 17, 2020, the parties submitted their joint statement of discovery disagreement (ECF No. 46). The joint statement was 148 pages long (and included 377 pages of exhibits) and thus violated the Court's Scheduling Order, which provides that joint statements of discovery disputes "shall not exceed to twenty-five (25) pages" not including exhibits. (ECF No. 20 at 4.) The joint statement also violated the Local Rules regarding discovery dispute statements because, for example, it did not contain a clear statement of what documents were claimed to be still outstanding. *See* Local Rule 251(c). The Court therefore vacated the January 24, 2020, hearing on the motion to compel and directed the parties to file a revised joint statement of discovery dispute that complied with the Court's scheduling order and the Local Rules. However, given the number of issues raised by Plaintiff, the Court granted the parties an additional five pages, for a total length of thirty pages, for the joint statement. (ECF No. 47.) The Court also informed the parties that they did not need to rebrief the spoliation issue as that issue was sufficiently presented in the non-compliant joint statement already submitted. (*Id.*) The parties filed the revised joint statement of discovery dispute on February 5, 2020. (ECF No. 49.) The motion seeking to compel discovery and raising other discovery disputes (ECF No. 44) and the revised joint statement of discovery dispute (ECF No. 49) are currently before the Court.

////

////

## II.    MOTION TO COMPEL DISCOVERY

### A.  <u>Legal Standards</u>

A party responding to a discovery request must provide all responsive information in that party's "possession, custody, or control." Fed. R. Civ. P. 4(a)(1). "'Accordingly, a party has an obligation to conduct a reasonable inquiry into the factual basis of his responses to discovery. Based on that inquiry, a party responding to a request for production 'is under an affirmative duty to seek that information reasonably available' to it and make an appropriate production of responsive documents.'" *Hartline v. Nat'l Univ*., 2018 WL 1014611, at *3 (E.D. Cal. Feb. 22, 2018) (citations omitted); *see Kaur v. Alameida*, 2007 WL 1449723, *2 (E.D. Cal. May 15, 2007) (ordering defendants to conduct additional research for responsive documents and reminding defendants and counsel "of their duty under Rule 34 to conduct a diligent search and reasonable inquiry in effort to obtain responsive documents").

The responding party "cannot furnish only that information within his immediate knowledge or possession; he is under an affirmative duty to seek that information reasonably available to him from his employees, agents, or others subject to his control." *Rogers v. Giurbino*, 288 F.R.D. 469, 485 (S.D. Cal. 2012) (internal quotation marks and citations omitted); *see Lopez v. Florez*, 2013 WL 1151948, * 2 (E.D. Cal. March 19, 2013) ("A responding party has an affirmative duty to reasonably seek information requested under Rule 34(a) from its agents or others under its control.") (citing *Hill v. Eddie Bauer*, 242 F.R.D. 556, 560 (C.D. Cal. 2007)). "A party is deemed to have control over documents if he or she has a legal right to obtain them." *Giurbino*, 288 F.R.D. at 485 (citations omitted). The responding party must "make a reasonable inquiry to determine whether responsive documents exist, and if they do not, the party should so state with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence." *Id.* (citations and internal quotation marks omitted).

A party propounding discovery requests "is entitled to individualized, complete responses to each discovery request, and generalized responses that do not specifically indicate whether all responsive documents to a particular discovery request have been produced are insufficient."

*Washington v. Rouch*, No. 1:15-cv-00725-DAD-BAM, 2017 WL 4123384, at *3 (E.D. Cal. Sept. 15, 2017) (citing *Louen v. Twedt*, 236 F.R.D. 502, 504-05 (E.D. Cal. 2006).

Discovery responses must also be signed by at least one attorney of record in the attorney's own name. Fed. R. Civ. P. 26(g)(1). By signing, the attorney is certifying that, to the best of her or his "knowledge, information, and belief formed after a reasonable inquiry," that a "disclosure is complete and correct as of the time it is made" and, that a response or objection to a discovery request is:

> (i)     consistent with [the Federal Rules of Civil Procedure] and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;
>
> (ii)     not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and
>
> (iii)     neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

*Id.* A court is required to strike "an unsigned disclosure, request, response, or objection . . . unless a signature is promptly supplied after the omission is called to the attorney's . . . attention." Fed. R. Civ. P. 26(g)(2).

> The duty to make a "reasonable inquiry" referred to in Rule 26(g),
>
> is satisfied if the investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances. It is an objective standard similar to the one imposed by Rule 11. In making the inquiry, the attorney may rely on assertions by the client and on communications with other counsel in the case as long as that reliance is appropriate under the circumstances. Ultimately, what is reasonable is a matter for the court to decide on the totality of the circumstances.
>
> Rule 26(g) does not require the signing attorney to certify the truthfulness of the client's factual responses to a discovery request. Rather, the signature certifies that the lawyer has made a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand. Thus, the lawyer's certification under Rule 26(g) should be distinguished from other signature requirements in the rules, such as those in Rules 30(e) and 33.

Fed. R. Civ. P. 26(g), Advisory Committee Notes (1993) (citations omitted).

Rule 26(g) requires counsel to be "proactive in ensuring that his clients are conducting thorough and appropriate document searches, especially in light of obvious gaps and underproduction." *Logtale, Ltd. v. IKOR, Inc.*, 2013 WL 3967750, at *2 (N.D. Cal. 2013).

> Under such circumstances, it is not enough for counsel to simply give instructions to his clients and count on them to fulfill their discovery obligations. The Federal Rules of Civil Procedure place an affirmative obligation on an attorney to ensure that a client's search for responsive documents and information is complete. As the Advisory Committee's Note to Rule 26(g) states, "[t]he duty to make a 'reasonable inquiry' is satisfied if the investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances." Therefore, where . . . counsel notices obvious "gaps in the production" of documents by his clients, he is obligated to make a reasonable inquiry as to the thoroughness of that search.

*Id.* (citations omitted).

The party propounding discovery may seek an order to compel responses when the opposing party fails to respond or has provided evasive or incomplete responses. Fed. R. Civ. P. 37(a)(3)(B). "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). Further, "a failure to object to discovery requests within the time required constitutes a waiver of any objection." *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992).

## B. **Unknown Outstanding Discovery**

### 1. *Plaintiff's Arguments*

Plaintiff states, "he has no way of knowing what responsive discovery remains outstanding," and that he "is only aware of the existence of outstanding discovery that was obviously not produced, based on its ascertainable omission from discovery that was produced." He notes that Federal Rule of Civil Procedure 26(g)(1) requires "a responding party's attorney to certify that a discovery response is complete and 'formed after a reasonable inquiry,'" but that the City "unilaterally decided (over Plaintiff's repeated objections) that it would only produce discovery on a 'rolling' basis, in violation of Fed. R. Civ. P. 34(b)(2)(A)'s time-limits." Plaintiff thus believes that neither Defendants nor their counsel have adequately certified that all responsive documents have been submitted with respect to any discovery request.

Plaintiff cites to three specific examples that he says support his belief. (ECF No. 49 at 3-

4.) Plaintiff argues that the types of unexplained omissions demonstrated in these three examples, in addition to Defendants' counsel's repeated unfulfilled promises to produce documents by dates certain, have caused "Plaintiff to have grave doubt that Defendant City has complied with its discovery obligations." (ECF No. 49 at 4.) Plaintiff contends that this is the type of situation where it is appropriate to have the responding party produce a verification after double-checking its files.

The first example cited by Plaintiff is an unproduced video-recorded officer-involved shooting ("OIS") interview of Defendant Ramar. Plaintiff states:

> On July 25, 2019, Defendant City belatedly and informally produced what was represented to be the officer-involved shooting ("OIS") investigation and associated materials (Bates 1-1576). At least one document was obviously unproduced, a "recording" of Defendant Ramar's interview, acknowledged to exist in a document that was produced (Bates No. 1057). Plaintiff's counsel inquired as to why the document was missing. On January 3, 2020, Defendant City informally produced the recording, without an explanation as to why it had not been produced with the supposedly-complete OIS investigation.

(ECF No. 49 at 3) (citations to ECF No. 46 omitted).)

The second example cited by Plaintiff is an unproduced pre-employment psychiatric evaluation. Plaintiff states:

> On August 2, 2019, Defendant City belatedly and informally produced what was represented to be Defendant Ramar's personnel file. (Bates No. 1257-1508). On August 7, 2019, Defendant City's counsel certified, pursuant to Fed. R. Civ. P. 26(g)(1), in an amended discovery response that the personnel file had been produced. California requires that peace officers undergo a psychological screening prior to employment, Cal. Code Regs., tit. 11, § 1955(a). This document was missing from Defendant City's supposedly-complete production. Plaintiff's counsel inquired as to why the document was missing. On September 26, 2019, Defendant City informally produced Defendant Ramar's pre-employment psychological evaluation, without explanation as to why it had not been produced with the supposedly-complete personnel file.

(ECF No. 49 at 3-4) (citations to ECF No. 46 omitted).)

The third example cited by Plaintiff is unproduced documents from *Reed v. City of Modesto*. Plaintiff states:

> On September 19, 2019, Plaintiff requested "All DOCUMENTS relating to any investigation concerning the subjects giving rise to *Reed v. City of Modesto*, E.D. Cal. Case No. 1:11-cv-01083-AWI-GSA—including, but not limited to, formal and informal complaints, interviews conducted, statements received, correspondence sent or received, video/audio recordings, reports and memos prepared." On October 24, 2019, Defendant City responded: "The Modesto Police Department has performed a diligent and thorough search and does not possess any 'formal or informal complaints, interviews conducted, statements received,

correspondence sent or received, video/audio records, reports and memos prepared' for this incident." However, on January 24, 2020, Defendant City's counsel stated that he "received the IA report that corresponds with the *Reed v. Modesto* lawsuit," confirming that the previous unsuccessful search for responsive documents was <u>not</u> "a diligent and thorough search."

(ECF No. 49 at 4) (citations to ECF No. 46 omitted).)

### 2. *Defendants' Arguments*

Defendants have responded to the examples provided by Plaintiff. As to the first and second examples provided by Plaintiff—the unproduced video-recorded OIS interview of Defendant Ramar and the unproduced pre-employment psychiatric evaluation—Defendants state the following: "To Defendants' knowledge, this is not a live issue. There is no disagreement for the Court to adjudicate. This [recording and evaluation] has been produced." (ECF No. 49 at 16.)

As to the third example provided by Plaintiff—the unproduced *Reed v. City of Modesto* documents—Defendants state:

Defendants previously indicated that Modesto Police Department did [not] possess any documents related to the *Reed v. Modesto* case. At the November 21, 2019 informal discovery dispute telephone conference, Judge Grosjean requested that counsel for Defendants contact the prior attorneys who represented the City. Counsel contacted Susan Coleman, a private attorney who represented the City. Ms. Coleman sent the IA for the incident, which has been BATES stamped and has been offered to be produced pursuant to a protective order.

(ECF No. 49 at 16.)

### 3. *Analysis*

While the Court appreciates that Defendants have supplemented their production, Defendants' response on this issue misses the point. Plaintiff contends that neither Defendants nor their counsel have adequately certified that all responsive documents have been submitted with respect to any discovery request. Plaintiff also contends that the specific examples he provides demonstrate unexplained omissions from Defendants' discovery responses and that it is still unclear whether all information responsive to Plaintiff's discovery requests have been disclosed by Defendants. Finally, Plaintiff contends that Defendants should be required to produce a verification after double-checking its files.

Defendants have not denied or otherwise responded to Plaintiff's contentions. (*See* ECF No. 49 at 16.) Instead, Defendants merely state their belief that they have provided information

responsive to the three specific examples Plaintiff cites or that they will do so subject to a protective order.

Under Federal Rule of Civil Procedure 26(g), discovery responses must be signed, certifying that, to the best of the attorney's knowledge, information, and belief, formed after a reasonable inquiry, the discovery response is "complete and correct as of the time it is made." Fed. R. Civ. P. 26(g)(1). A court is required to strike "an unsigned disclosure, request, response, or objection . . . unless a signature is promptly supplied after the omission is called to the attorney's . . . attention." Fed. R. Civ. P. 26(g)(2).

Here, based on Plaintiff's uncontested arguments, the Court finds that Defendants have failed to provide adequate certification that its discovery responses were complete and correct as of the time made and, as discussed further below, that Defendants have failed to provide discovery in a timely manner and have later located information Defendants initially indicated was not available. Under these circumstances, it is appropriate to require Defendants to double-check for responsive information in its possession, custody, or control, and provide a verification that both explains the steps taken to conduct the double-check and certifies that all responsive documents have been provided. *See Duenez v. City of Manteca*, No. 2:11-CV-1820, 2013 WL 684654, at *9 (E.D. Cal. Feb. 22, 2013) ("[C]ounsel for defendants admitted that they have had past success in locating documents responsive to other discovery requests propounded by plaintiffs after 'double-checking' their files. Accordingly, the City is directed to double-check its files with respect to this request and to either produce any newly-found responsive documents or submit an amended verification that documents responsive to this request do not exist.").

The Court will therefore direct that Defendants, within forty-five days of the date this order is entered, do the following as to each of Plaintiff's discovery requests: (1) double-check for information in its possession, custody, or control that is responsive to the discovery request; (2) produce any newly-found responsive documents; and (3) submit a verification that both explains the steps it took to conduct the double-check and certifies that all responsive documents have been provided. The Court will also grant Plaintiff leave to request that Defendants provide a declaration and/or appear for a Federal Rule of Civil Procedure 30(b)(6) deposition on efforts

Defendants have taken to search for information responsive to Plaintiff's discovery request(s) and will require Defendants to comply with such request(s).

Finally, to the extent Defendants have failed to disclose documents because such documents are not subject to an existing protective order, the burden is on Defendants to affirmatively seek a protective order. *See* Fed. R. Civ. P. 26(c). If Plaintiff will not stipulate to a protective order, Defendants must file a motion for a protective order. *See id.* Defendants may not simply withhold information responsive to a discovery request on the condition that Plaintiff agree to enter into a protective order. Any request by Defendant for a protective order shall be filed on an expedited basis.

### C. "Document Dump"

#### 1. Plaintiff's Arguments

Plaintiff argues that he has no way of knowing whether all responsive documents have been produced by Defendant City because of Defendant City's November 27, 2019, unorganized "document dump." Specifically, Plaintiff argues,

> Defendant City's third and final 'rolling' production of internal affairs ("IA") and administrative investigations came in an unorganized form, with 509 individual items contain[ed] in a single folder, where all previous productions had been organized and segregated by Modesto Police Department's assigned IA or investigation number. Even Bates numbers applied to the documents are out-of-order, making manual segregation difficult.

(ECF No. 49 at 5.) Plaintiff provides the following table of the document description and Bates numbers from this "document dump":

| Document Description | Bates Nos. |
|---|---|
| Modesto Police Department IA15-011 | 3347-3514 |
| Modesto Police Department IA16-048 | 3581-7643, 7689, 7694, 7695, 7723, 7730, 7731, 7760, 7790, 7791, 7821, 7822, 7842, 7864-7868, 7869-7917, 7918-7919 & 8801-9467 |
| Modesto Police Department FD14-002 | 9773-9781, 9796-9968 & 9969-10157 |
| Modesto Police Department FD15-002 | 11586-11784 & 11785-11974 |
| Modesto Police Department FD15-003 | 12690-12857 & 12858-12946 |
| Modesto Police Department FD15-004 | 13787-13980 & 13981-14136 |
| Modesto Police Department FD16-001 | 14937-14987, 15589-15606 & 15607-15877 |
| Modesto Police Department FD16-003 | 16640-16662, 16663-16679 & 16680-16707 |

| Modesto Police Department FD16-005 | 17487-17488, 17490-17494, 17507-17543, 18468-18525, 20962-20965, 20966-20994, 20995-21003, 21004-21045 & 21053-21382 |
|---|---|
| Modesto Police Department FD16-006 | 22214-22655 |
| Modesto Police Department FD17-001 | 22730-22764, 22768-22805, 22892-22893, 24188-24437 & 24438-24697 |
| Modesto Police Department FD17-002 | 1639-1651 |

(ECF No. 49 at 5.)

### 2. Defendants' Arguments

Defendants state they "have worked to efficiently to BATES stamp twelve prior in custody deaths and/or prior shooting investigations. Defendants have indicated which documents pertain to which investigation." (ECF No. 49 at 16.)

### 3. Analysis

Federal Rule of Civil Procedure 34(b)(2)(E), which addresses the production of documents or electronically stored information, provides that, unless otherwise stipulated or ordered by the court, a "party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." Fed. R. Civ. P. 34(b)(2)(E).

As noted, Defendants state only that they have indicated which documents pertain to which investigation. They do not indicate that the production of the documents was as the documents were kept in the usual course of business and, based on the uncontradicted information provided by Plaintiff, the documents produced by Defendants on November 27, 2019, were also not organized and labeled to correspond with the categories in Plaintiff's discovery requests. Thus, Defendants' November 27, 2019, discovery response does not comply with Rule 34(b)(2)(E) and is accordingly deficient.

The Court will require Defendants to reproduce, within forty-five days of the date this order is entered, Defendants' November 27, 2019, discovery response in compliance with Rule 34(b)(2)(E), which requires that Defendants "must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the

request[s]." Fed. R. Civ. P. Rule 34(b)(2)(E). To the extent Plaintiff seeks to have Defendants produce the documents in a manner other than as required by Rule 34(b)(2)(E), Plaintiff must seek and obtain a stipulation from Defendants for such production. *See id.*

### D. RPD No. 7 (Defendant Ramar's Personnel Files)

#### 1. Plaintiff's Arguments

Plaintiff contends that he "is aware of at least two unproduced pages from within Defendant City's production of Defendant Ramar's personnel file (Bates Nos. 1257-1508). "The missing documents are pages one and two from a four-page 2017 performance evaluation of Defendant Ramar, where only pages three and four were produced (Bates 1294-1295)." (ECF No. 49 at 6.) Plaintiff states that the missing documents are particularly relevant to this case "because they cover the period during which the incident giving rise to this action occurred—*i.e.*, Defendant Ramar's shooting Plaintiff on November 6, 2017." (*Id.*) Plaintiff contends that on January 3, 2020, after Plaintiff had requested the missing documents for several months and after the filing of the motion to compel, Defendant City produced the declaration of Sgt. Christopher Adams which stated the following: "I personally searched Sgt. Jerry Ramar's personnel file. I found the 'Sergeant Performance Appraisal' evaluation" but "I could not locate a page 1 or page 2 for the evaluation." Plaintiff contends that this is not a sufficient response, and that the City was required to provide an explanation of the search conducted with sufficient specificity to allow the Court to determine whether the City made a reasonable inquiry and exercised due diligence. "Simply searching Defendant Ramar's personnel file is not a 'reasonable inquiry,' where the missing documents may be found in some other location within Defendant City's 'possession, custody, or control,'" such as "the computer or server on which the performance evaluation was originally prepared and/or stored." (ECF No. 49 at 6 (citations omitted).)

#### 2. Defendants' Arguments

Defendants state: "Defendants have nothing to add to Sgt. Adams's declaration." (ECF No. 49 at 16.)

////

////

### 3. *Analysis*

"A party responding to a document request cannot furnish only that information within his immediate knowledge or possession; he is under an affirmative duty to seek that information reasonably available to him from his employees, agents, or others subject to his control." *Rogers*, 288 F.R.D. at 485. "A party must make a reasonable inquiry to determine whether responsive documents exist, and if they do not, the party should so state with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence." *Id*. (citations and internal citation marks omitted).

Here, it is clear that there are documents missing from the production of Ramar's personnel file. Defendants state, through the declaration of Sgt. Christopher Adams, that they have searched for the missing documents by searching Ramar's personnel file itself. This is insufficient. Defendants are under an affirmative duty to exercise due diligence and make a reasonable inquiry to determine whether responsive documents exist. A search of Ramar's personnel file does not fulfill that duty. For example, as Plaintiff has suggested, the missing pages may be located on a computer, server, or other location within Defendants' possession, custody, or control.

The Court will therefore require that Defendants, within forty-five days from the date this order is entered, do the following as to the 2017 performance review of Defendant Ramar and any other information responsive to Plaintiff's Request for Production ("RPD") No. 7: (1) double-check for information in its possession, custody, or control that is responsive to this discovery request, and specifically, search on the City's computers, servers, and other locations within Defendants' possession, custody, or control; (2) produce any newly-found responsive documents; and (3) submit a verification that both explains the steps taken to conduct the double-check and certifies that all responsive documents have been provided.

### E. <u>RPD No. 14 (Defendant Ramar's Prior Testimony)</u>

#### 1. *Plaintiff's Arguments*

Plaintiff states his belief that the City has not produced all documents responsive to a request for Ramar's "testimony . . . provided in any civil action—including, but not limited to,

deposition testimony." Plaintiff explains that the City has responded only that Ramar was previously sued in *Holcomb v. Ramar*, Case 1:13-cv-01102-AWI-SKO, that the case was tried, and,

> [t]he trial resulted in a defense verdict. Meyers, Nave, Riback, Silver, & Wilson represented Jerry Ramar and the City of Modesto in the case. The trial attorney was Blake Loebs is deceased. [¶] In August 2019, Meyers, Nave Riback, Silver, & Wilson performed a search for prior testimony for Ramar for this case and was unable to find any responsive documents.

(ECF No. 49 at 6 (citation omitted).)

Plaintiff contends that this response is not sufficient because it does not provide an explanation of the search conducted with sufficient specificity to allow the Court to determine whether the City made a reasonable inquiry and exercised due diligence. Specifically, "[s]imply asking a firm that previously represented Defendant Ramar if it possessed any testimony is not a 'reasonable inquiry,' where such testimony may be found in some other location within Defendant City's 'possession, custody, or control," such as through "the court reporting company that transcribed Defendant Ramar's testimony." (ECF No. 49 at 6-7.)

### 2. *Defendants' Arguments*

Defendants state: "To Defendants' knowledge, this is not a live issue. Their prior attorneys searched and found no responsive documents." (ECF No. 49 at 16.)

### 3. *Analysis*

A party responding to a document request "cannot furnish only that information within his immediate knowledge or possession; he is under an affirmative duty to seek that information reasonably available to him from his employees, agents, or others subject to his control." *Rogers*, 288 F.R.D. at 485. "A party must make a reasonable inquiry to determine whether responsive documents exist, and if they do not, the party should so state with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence." *Id.* (citations and internal quotation marks omitted).

Defendants indicate that they sought information from their prior attorneys as to one case in which Ramar was a defendant, *Holcomb v. Ramar*, Case 1:13-cv-01102-AWI-SKO. Defendants have not, however, described the inquiry and efforts Defendants made to

affirmatively seek information available to them from other sources, including their own records, as to any prior testimony provided by Ramar in that prior case or any other case in which Ramar was involved.

Turning to the case of *Holcomb v. Ramar*, Case 1:13-cv-01102-AWI-SKO, the Court notes that judgment in that case was entered on August 21, 2017, following a jury trial. (*See Holcomb v. Ramar,* ECF Nos. 188, 192.). Defendants represent that they reached out to the prior attorneys in August 2019, just two years later, and that those prior attorneys indicate that they do not have any information responsive to the request for prior testimony of Ramar. The Court finds it highly unlikely that there is neither deposition nor trial testimony from Ramar from that prior case. Thus, to the extent there is a case file from this prior case, that file is likely to contain at least deposition testimony, if not trial testimony, from Ramar.

The California Rules of Professional Conduct do not appear to have a bright-line rule on how long Defendants' prior attorneys are required to maintain the file from this prior case. *See* Cal. State Bar Formal Opinion No. 2001-157 (addressing ethical duties of attorney regarding retention of former clients' files, and explaining that there is "no shortcut, 'bright line' rule" for determining how long items in a closed file must be maintained). However, unless there is an agreement with the client on the disposition of papers in a closed file, the prior attorneys are required to make reasonable efforts to obtain a client's consent before destroying the items in the file. *Id.* Thus, it appears likely that the prior attorneys would still have the file from the prior case, which, as noted, concluded just two years prior to the purported search for Ramar's testimony, or that the prior attorneys would have obtained permission from Defendants, including Ramar, to destroy the file from the prior case.

In light of the above, the Court finds Defendants' response to RPD No. 14, seeking Ramar's former testimony, to be inadequate. The Court will therefore require that Defendants, within forty-five days of the date this order is entered, do the following as to RPD No. 14: (1) double-check for information in their possession, custody, or control that is responsive to this discovery request, and specifically search the City's computers, servers, archived documents, and other locations within Defendants' possession, custody, or control; (2) produce any responsive

documents; and (3) submit a verification that both explains the steps Defendants took to conduct the double-check and certifies that all responsive documents have been provided. If information responsive to RPD No. 14 is unavailable because the information has been destroyed by or with the permission of Defendants, an explanation as to such destruction shall be included in the verification. If former counsel for Defendants in *Holcomb v. Ramar* has indicated that responsive information is not available, Defendants shall provide the name of the attorney who so indicated along with an explanation from that attorney as to why the information is no longer available.

### F. **RPD No. 59 (*Rodriguez v. City of Modesto*, 1:10-cv-01370-LJO-MJS) and RPD No. 60 (*Olvera v. City of Modesto*, 1:11-cv-00540-AWI-GSA)**

#### *1. Plaintiff's Arguments*

Plaintiff states that in response to his requests for *Monell* discovery related to prior litigation in *Rodriguez v. City of Modesto*, E.D. Cal. Case 1:10-cv-01370-LJO-MJS, and *Olvera v. City of Modesto*, E.D. Cal. Case 1:11-cv-00540-AWI-GSA, the City responded that after "a diligent and thorough search," it found it "does not possess" responsive documents. Plaintiff contends this is not sufficient because it does not provide an explanation of the search conducted with sufficient specificity to allow the Court to determine whether the City made a reasonable inquiry and exercised due diligence. Plaintiff also notes that Defendants are required to produce documents in their "possession, custody, or control," and not merely documents in their "possession."

#### *2. Defendants' Arguments*

Defendants respond as to both of these requests as follows:

> Modesto Police Department had no responsive records. At the November 1, 2019 informal discovery dispute telephone conference, Judge Grosjean requested that counsel for Defendants contact the prior attorneys who represented the City in this case. Blake Loebs of Meyers Nave was the trial attorney on this case. He is now deceased. Myers Nave has searched for responsive documents. If responsive documents exist, they will be produced.

(ECF No. 49 at 16-17.)

#### *3. Analysis*

A party responding to a document request "cannot furnish only that information within his immediate knowledge or possession; he is under an affirmative duty to seek that information

reasonably available to him from his employees, agents, or others subject to his control." *Rogers*,
288 F.R.D. at 485. "A party must make a reasonable inquiry to determine whether responsive
documents exist, and if they do not, the party should so state with sufficient specificity to allow
the Court to determine whether the party made a reasonable inquiry and exercised due diligence."
*Id.* (citations and internal quotation marks omitted).

Defendants indicate that they sought information from their prior attorneys and that if
documents exist, they will be produced. The Court notes that *Rodriguez v. City of Modesto*, E.D.
Cal. Case 1:10-cv-01370-LJO-MJS, was dismissed by stipulation on July 27, 2015 (*Rodriguez v.
City of Modesto*, ECF No. 98); and that *Olvera v. City of Modesto*, E.D. Cal. Case 1:11-cv-00540-
AWI-GSA, was dismissed by stipulation on September 19, 2015 (*Olvera v. City of Modesto*, ECF
No. 67). As discussed above in relation to RPD No.14, it appears likely that the former attorneys
would still have these case files or would have obtained permission from Defendant City to
destroy the files.

In light of the above, the Court finds Defendants' response to RPD Nos. 59 and 60,
seeking *Monell* discovery related to prior litigation in *Rodriguez v. City of Modesto*, E.D. Cal.
Case 1:10-cv-01370-LJO-MJS, and *Olvera v. City of Modesto*, E.D. Cal. Case 1:11-cv-00540-
AWI-GSA, to be inadequate. The Court will therefore require that Defendants, within forty-five
days from the date this order is entered, do the following as to RPD Nos. 59 and 60: (1) double-
check for information in Defendants' possession, custody, or control that is responsive to these
discovery requests, and specifically search the City's computers, servers, archived documents,
and other locations within Defendants' possession, custody, or control; (2) produce any
responsive documents; and (3) submit a verification that both explains the steps Defendants took
to conduct the double-check and certifies that all responsive documents have been provided. If
information responsive to RPD Nos. 59 and 60 is unavailable because the information has been
destroyed by or with the permission of Defendants, an explanation as to such destruction shall be
included in the verification. If former counsel for Defendants has indicated that responsive
information is not available, Defendants shall provide the name of the attorney who so indicated
along with an explanation from that attorney as to why the information is no longer available.

## G. RPD No. 61 (*Reed v. City of Modesto*, 1:11-cv-01083-AWI-GSA)

### *1. Plaintiff's Arguments*

Plaintiff states that in response to his request for *Monell* discovery related to prior litigation in *Reed v. City of Modesto*, E.D. Cal. Case 1:11-cv-01083-AWI-GSA, the City responded that after "a diligent and thorough search," it found it "does not possess" responsive documents. "However, on January 24, 2020, Defendant City's counsel acknowledged—*for the very first time*—that responsive documents do exist. However, to date, Defendant City has refused to produce the documents unless and until Plaintiff agrees to a stipulated protective order covering the documents. Plaintiff refuses because Defendant City failed timely to move for a protective order and, in any event, the documents are not subject to protection under Fed. R. Civ. P. 26(c)." (ECF No. 49 at 7.)

### a. Defendants' Arguments

Defendants respond:

> Modesto Police Department had no responsive records. At the November 1, 2019 informal discovery dispute telephone conference, Judge Grosjean requested that counsel for Defendants contact the prior attorneys who represented the City. Defense counsel contacted Susan Coleman, a private attorney who represented the City. Ms. Coleman sent the IA for the incident, which has been BATES stamped and has been offered to be produced pursuant to a protective order.

(ECF No. 49 at 17.)

### b. Analysis

Defendants' response is insufficient. Defendants must affirmatively seek a protective order. *See* Fed. R. Civ. P. 26(c). If Plaintiff will not stipulate to a protective order, Defendants must file a motion for a protective order. Defendants may not simply withhold information responsive to a discovery request on the condition that Plaintiff agree to enter into a protective order.

The Court will direct that final production of all documents responsive to RPD No. 61 shall be completed within forty-five days of the date this order is entered. If Defendants have not provided documents responsive to RPD No. 61 within forty-five days of the date this order is entered, unless this deadline is extended by the Court in response to a motion, the Court will

sanction Defendants $100 for each day the responsive documents are impermissibly withheld. If Defendants believe a protective order is needed, and are unable to obtain a stipulation from Plaintiff, they must file an expedited motion seeking a protective order.

### H. RPD No. 62 (*Mugrauer v. City of Modesto*, 1:16-cv-00480-AWI-SAB) and RPD No. 63 (*Schmidt v. City of Modesto*, 1:17-cv-01411-DAD-MJS)

#### 1. Plaintiff's Arguments

Plaintiff states that he requested *Monell* discovery related to prior litigation in *Mugrauer v. City of Modesto*, E.D. Cal. Case No. 1:16-cv-00480-AWI-SAB and *Schmidt v. City of Modesto*, E.D. Cal. Case No. 1:17-cv-01411-DAD-MJS. In response, Defendant City stated that it would produce the "Modesto Police Department's investigation of this incident in its possession," but "the documents were produced in the unorganized 'document dump,' described above." (ECF No. 49 at 7-8.) "Further, production of only the 'Modesto Police Department's investigation of this incident' is insufficient, where several other documents related to this incident and litigation <u>must</u> exist—*e.g.*, discovery requests and responses, testimony, etc." (*Id.*)

#### 2. Defendants' Arguments

Defendant responds as follows:

> Modesto Police Department had no responsive records. At the November 1, 2019 informal discovery dispute telephone conference, Judge Grosjean requested that counsel for Defendants contact the prior attorneys who represented the City in this case. Blake Loebs of Meyers Nave was the trial attorney on this case. He is now deceased. Myers Nave has searched for responsive documents. If responsive documents exist, they will be produced.

(ECF No. 49 at 17.)

#### 3. Analysis

A party responding to a document request "cannot furnish only that information within his immediate knowledge or possession; he is under an affirmative duty to seek that information reasonably available to him from his employees, agents, or others subject to his control." *Rogers*, 288 F.R.D. at 485. "A party must make a reasonable inquiry to determine whether responsive documents exist, and if they do not, the party should so state with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence."

*Id.* (citations and internal quotation marks omitted).

Defendants indicate that they sought information from their prior attorneys and that if documents exist, they will be produced. Defendants have not, however, described the inquiry and efforts Defendants made to affirmatively seek information available to them from other sources, including their own records.

As to Defendants' attempts to obtain the information from their prior attorneys, the Court notes that *Mugrauer v. City of Modesto*, E.D. Cal. Case No. 1:16-cv-00480-AWI-SAB, was dismissed by stipulation of the parties on May 28, 2017 (*Mugrauer v. City of Modesto*, ECF No. 37), and *Schmidt v. City of Modesto*, E.D. Cal. Case No. 1:17-cv-01411-DAD-MJ, was dismissed by stipulation of the parties on March 28, 2018 (*Schmidt v. City of Modesto*, ECF No. 27). As discussed above in relation to RPD No.14, it appears likely that the former attorneys would still have the files for these cases or would have obtained permission from Defendant City to destroy the files. Thus, the Court finds Defendants' responses to RPD Nos. 62 and 63, seeking *Monell* discovery related to prior litigation in *Mugrauer v. City of Modesto*, E.D. Cal. Case No. 1:16-cv-00480-AWI-SAB, and *Schmidt v. City of Modesto*, E.D. Cal. Case No. 1:17-cv-01411-DAD-MJS, to be inadequate.

The Court will therefore require that Defendants, within forty-five days of the date this order is entered, do the following as to RPD Nos. 62 and 63: (1) double-check for information in Defendants' possession, custody, or control that is responsive to these discovery requests, and specifically search the City's computers, servers, archived documents, and other locations within Defendants' possession, custody, or control; (2) produce any responsive documents; and (3) submit a verification that both explains the steps Defendants took to conduct the double-check and certifies that all responsive documents have been provided. If information responsive to RPD Nos. 62 and 63 is unavailable because the information has been destroyed by or with the permission of Defendants, an explanation as to such destruction shall be included in the verification. If former counsel for Defendants has indicated that responsive information is not available, Defendants shall provide the name of the attorney who so indicated along with an explanation from that attorney as to why the information is no longer available.

## III.    SPOLIATION OF ESI

As noted previously, Plaintiff submitted a citizen complaint form to the MPD alleging misconduct in connection with the November 6, 2017, officer-involved shooting of Plaintiff. On December 18, 2018, the MPD Shooting Review Board concluded that Defendant Ramar's discharge of his firearm against Plaintiff was "within policy," and, as a result that the allegations in Plaintiff's citizen complaint form were "Unfounded." On January 29, 2019, Plaintiff filed the present action, and the Modesto Police Department was served on January 31, 2019.

On May 15, 2019, Plaintiff sought electronically stored information ("ESI") from the City in connection with the shooting of Plaintiff, including (1) documents "sent by" Officer Ramar, including "statements, correspondence, reports, memos, and emails"; (2) documents "received by" Ramar, including "statements, correspondence, reports, memos, and e-mails"; "text messages/short message service ('SMS') sent by" Ramar; and (4) "text messages/short message service ('SMS') received by" Ramar. (ECF No. 46 at 115-16.)

On August 30, 2019, the City's counsel informed Plaintiff's counsel, "Ramar returned his work cell phone when he resigned," "[n]o data was attempted to be recovered from it," and the MPD "no longer has the cell phone." (ECF No. 46 at 116.) On September 18, 2019, Plaintiff's counsel requested an explanation as to "*why* and *how* Defendant City disposed [of Ramar's cell phone] which could have been relevant to this action, *while this action was pending.*" (*Id.*) On September 24, 2019, Plaintiff's counsel and Defendants' counsel had a telephonic conference during which Defendants' counsel agreed to provide, by September 26, 2019, a declaration of the person most knowledgeable about the collection and non-retention of Ramar's cell phone. (*Id.*) On September 26, 2019, Defendants' counsel stated that Defendant City would produce a declaration concerning the spoliation of Ramar's cell phone "in two weeks." (*Id.*)

On November 15, 2019, Defendants' counsel conceded that he had still not produced a declaration regarding the spoliation of Ramar's cell phone, and stated that a declaration would be provided, but failed to specify a date for such production. No declaration had been provided by Plaintiff as of the date Plaintiff filed the motion to compel. (*Id.*)

On January 9, 2020, the City informally produced by email a declaration regarding the

cell phone. In this declaration, Lt. Tait explained that (1) on March 11, 2019, Ramar returned the cell phone he had been assigned by the MPD after Ramar resigned his employment; (2) later on March 11, 2019, the MPD reset Ramar's cell phone "to factory setting and erased of all contents"; (3) Ramar's cell phone was then returned to AT&T; (4) on November 21, 2019, Cpt. Gundlach had Ramar's cell phone "returned" to the MPD; (5) Ramar's cell phone was stored at MPD until January 5, 2020, when it was "booked [] into evidence." (*Id.*)

## A. Plaintiff's Arguments

Plaintiff argues that Defendants have lost the ESI on Ramar's cell phone and that this loss is due to the failure of Defendants to take reasonable steps to preserve that information. Plaintiff points out that litigation was initiated in this case on January 29, 2019; that the MPD was served on January 31, 2019; that on March 11, 2019, Ramar returned the cell phone that had been assigned to him by the MPD, and that, later that same day, the MPD reset the cell phone to factory settings and "erased all contents" on the cell phone, resulting in the loss of all of the ESI on that phone.

Plaintiff also argues that the loss of this information is prejudicial. Plaintiff states that he does not know the contents of the ESI that was destroyed because it was destroyed before Plaintiff had a chance to obtain it. However, the ESI may have included information admissible at trial, and the fact that the ESI of a key Defendant witness has been destroyed permits the reasonable inference that Plaintiff has been prejudiced by the City's spoliation. (ECF No. 46 at 117.)

Plaintiff seeks sanctions for the spoliation of the ESI from the cell phone but does not specify what sanctions he seeks. (ECF No. 46 at 117-18.)

## B. Defendants' Arguments

Defendants state that they have provided the declaration of Lt. Aaron Tait regarding the cell phone, but do not otherwise provide any argument. (ECF No. 46 at 118 (citing to ECF No. 46-2 at 8-14.)

The declaration of Lt. Tait states that when the MPD issues a cell phone to an officer for the first time, the cell phone contains no information in the contents or settings. (ECF No. 46-2 at

8.) When an officer returns a cell phone to the MPD, the cell phone may be reassigned to another officer and prior to that reassignment, the MPD erases the cell phone of all information in its contents and settings. (*Id.*) MPD issued Ramar an Apple iPhone on October 30, 2015, and Ramar returned the cell phone to the MPD on March 11, 2019. (*Id.* at 9.) On March 11, 2019, the MPD reset the cell phone to factory settings and erased all content. On March 19, 2019, the same cell phone was reassigned to another officer. The cell phone was then returned to AT&T on an unspecified date. (*Id.*) On November 21, 2019, Captain Gundlach had the cell phone returned to the MPD. Between December 20, 2019, and December 22, 2019, Captain Gundlach had the cell phone placed in the office of Lt. Tait. On December 23, 2019, Lt. Tait located the cell phone on his desk. Lt. Tait stored the cell phone in his office until January 5, 2020, when he booked it into evidence. (*Id.*)

## C. <u>Analysis</u>

The spoliation of ESI is covered by Federal Rule of Civil Procedure 37(e), which provides:

> (e) Failure to Preserve Electronically Stored Information. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> > (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> >
> > (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> >
> > > (A) presume that the lost information was unfavorable to the party;
> > >
> > > (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> > >
> > > (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

Plaintiff argues, and Defendants do not dispute, that Ramar's cell phone had ESI that should have been preserved. Ramar is alleged to be the officer who shot Plaintiff during the incident at issue in this case. Thus, the cell phone that MPD issued to Ramar and that Ramar was using at the time of and following the incident may have had relevant ESI.

24

Plaintiff also argues, and Defendants do not dispute, that the ESI on the cell phone has been lost and that the ESI cannot be restored or replaced through additional discovery. Plaintiff contends that Defendants failed to take reasonable steps to preserve the ESI on this cell phone. Defendants have not responded to this contention. Indeed, the declaration of Lt. Tate demonstrates that absolutely no steps were taken by Defendants to preserve the ESI on the cell phone, even though litigation was pending by the time the cell phone was erased and reset to factory settings.

The question that remains is exactly why the City/MPD did not preserve the ESI from Ramar's cell phone.

"Although the Ninth Circuit has not precisely defined when the duty to preserve is triggered, trial courts in this Circuit generally agree [it is triggered] '[a]s soon as a potential claim is identified.'" *Apple Inc. v. Samsung Elecs. Co., Ltd*., 888 F. Supp. 2d 976, 991 (N.D. Cal. 2012) (quoting *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006); other citations omitted). A party must preserve evidence it knows or should know is relevant to a claim or defense of any party, or that may lead to the discovery of relevant evidence. This duty to preserve arises not only during litigation, but also during the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation. *Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1051 (S.D. Cal. 2015) (citations omitted); *see U.S. v. Kitsap Physicians Serv*., 314 F.3d 995, 1001 (9th Cir. 2002) (routine destruction constitutes spoliation where party "had 'some notice that the documents were potentially relevant' to the litigation before they were destroyed") (citation omitted).

"Once the duty to preserve attaches, a party must suspend any existing policies related to deleting or destroying files and preserve all relevant documents related to the litigation," and courts may sanction parties responsible for spoliation of evidence. *Compass Bank*, 104 F. Supp. 3d at 1052 (citations and internal quotation marks omitted); *In re Napster, Inc.*, 462 F. Supp. 2d at 1066, 1070. Making "some efforts" to preserve documents does not meet this obligation; implementation of a full litigation hold to ensure preservation of relevant documents is required. *Apple Inc.*, 888 F. Supp. 2d at 991-92; *see Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir.

2006) ("A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were potentially relevant to the litigation before they were destroyed.'" (citation omitted)).

Here, Defendants knew or should have known of a potential claim against them in November 2017, after the shooting occurred. To the extent there was any doubt regarding a potential claim, that doubt was eliminated in June 2018, when Plaintiff submitted a citizen complaint to the MPD, and was again eliminated in January 2019, when Plaintiff filed the present action. Yet, there is no indication that the City, MPD, Ramar, or any other defendant issued a litigation hold or otherwise sought to preserve relevant evidence, including the ESI on the cell phone that Ramar had been issued by MPD, that Ramar was using at the time of the shooting, and that Ramar continued to use until he resigned in March 2019. There also is no indication that counsel for Defendants, who first entered an appearance on February 8, 2019, issued a litigation hold or otherwise sought to preserve the cell phone or ESI on that phone

Despite the pending litigation, when Ramar resigned in March 2019, the cell phone and ESI contained thereon were completely erased. That this may have been done pursuant to MPD's existing policies does not excuse the spoliation of the evidence. *See Compass Bank*, 104 F. Supp. 3d at 1052; *In re Napster, Inc.*, 462 F. Supp. 2d at 1066, 1070 (once duty to preserve attaches, litigant or potential litigant is required to suspend any existing policies related to deleting or destroying evidence and preserve all relevant evidence related to the litigation).

Based on the foregoing, the Court finds spoliation by Defendants of the ESI from the cell phone that had been issued to Ramar. The Court also notes that Defendants City of Modesto and the Modesto Police Department have been subject to multiple civil actions in the past and thus are well aware of their obligations to issue a litigation hold and preserve evidence.

As to prejudice, Plaintiff asks the Court to presume that the lost ESI from the cell phone was prejudicial because the ESI was destroyed before Plaintiff had a chance to obtain and review it. "In the Ninth Circuit, spoliation of evidence raises a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it." *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 993 (N.D. Cal. 2012)

(collecting cases). The Court agrees that a presumption of prejudice is appropriate here. Again, the lost ESI was from the cell phone of Ramar, who is alleged to have shot Plaintiff multiple times during the incident at issue in this case. The cell phone may have thus contained relevant information, including communications by and to Ramar related to the shooting incident, and this information may have, in turn, been admissible at trial for purposes such as impeachment.

The Court therefore finds both spoliation of ESI from the cell phone that had been issued to Ramar, and prejudice resulting from the loss of that ESI. As to the measures necessary to cure the prejudice resulting from the loss of this ESI, the Court leaves that determination for the trial judge, but notes that Plaintiff may want to request, for example, an instruction to the jury, further exclusion of evidence, or testimony to the jury regarding the spoliation.

## VII.    MOTION TO REVOKE STIPULATED PROTECTIVE ORDERS

### A.  <u>Plaintiffs Arguments</u>

Plaintiff seeks to revoke the two stipulated protective orders that have been entered in this case, raising several different arguments in support of revocation.

First, Plaintiff argues that Defendants did not timely move for a protective order and instead demanded that Plaintiff stipulate to entry of a protective order as a condition of receiving responsive discovery. (ECF No. 49 at 8.) Plaintiff notes that although he stipulated to entry of the protective orders, in doing so he reserved this objection. (*Id.*)

Second, Plaintiff argues that Defendant City has improperly utilized the protective orders to designate documents on a blanket-wide basis. (ECF No. 49 at 9.)

Third, Plaintiff argues that it has complied with the challenge procedures set out in the stipulated protective orders by providing Defendants with detailed correspondence explaining the basis for his challenge that confidentiality designations were not proper. Plaintiff contends that Defendants have, however, failed to comply with the challenge procedures set out in the stipulated protective orders and have, instead, stated only that they "disagree" and that it "will provide our analysis for our position in the moving papers. . . ." (ECF No. 49 at 9.)

Finally, Plaintiff argues that Defendants have failed to demonstrate the good cause required to designate documents subject to a protective order. (ECF No. 49 at 9.) Specifically,

Plaintiff contends that Defendants have failed to demonstrate a "particularized harm"; that the balancing of interests favors disclosure; and that, even if a protective order is appropriate, it should only cover narrow limited categories as opposed to the entire documents designated by Defendants. (ECF No. 49 at 9-13.)

**B. Defendants' Arguments**

Defendants request that the Court retain the confidentiality of the documents disclosed pursuant to the protective orders. Defendants argue that they have "produced thousands of pages of confidential documents in this matter," that the first batch of confidential documents was produced in reliance on "Stipulated Protective Order Re: IA Investigations," filed on September 10, 2019; and that "the second batch of confidential documents were produced in reliance on this Court's Minute Order of November 22, 2019 (Docket No. 41)." Finally, Defendants argue that "Defendants and the community of Modesto will be harmed by the public dissemination of the documents" covered by the protective orders, and that "[n]either Plaintiff nor the public will suffer harm if the documents remain confidential."

**C. Analysis**

Federal Rule of Civil Procedure 26(c), which sets forth the grounds for protective orders, "was enacted as a safeguard for the protection of parties and witnesses in view of the broad discovery rights authorized in Rule 26(b)." *United States v. Columbia Broad. Sys., Inc.*, 666 F.2d 364, 368-69 (9th Cir. 1982). "Generally, the public can gain access to litigation documents and information produced during discovery unless the party opposing disclosure shows 'good cause' why a protective order is necessary." *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002). To satisfy this "good cause" standard, the party seeking a protective order must explain the specific prejudice or harm that will result if the information is not protected. *Id.* at 1211.

As Plaintiff points out, Defendants have not moved for a protective order. Instead, the parties have entered into two stipulated protective orders. However, in entering these protective orders, Plaintiff reserved the right to raise an objection to the timeliness of Defendants' seeking of the protective orders. Specifically, Plaintiff argues that Defendant City did not timely move for a

protective order and instead demanded that Plaintiff stipulate to entry of a protective order as a condition of receiving responsive discovery. (ECF No. 49 at 8.)

The Court finds Defendants' approach of withholding discovery unless Plaintiff agreed to a stipulated protective order to be inappropriate and not well-taken. Defendants should have, instead, sought to obtain a stipulation from Plaintiff for entry of a protective order and then, if unsuccessful, moved the Court for entry of a protective order pursuant to Federal Rule of Civil Procedure 26(c). The Court does not, however, find that Defendants' approach warrants revocation of the stipulated protective orders that have been entered in this case. Rule 26(c) does not impose a time constraint on requests for protective orders and anticipates that a discovery request may already be pending when a request for a protective order is sought. *See* Fed. R. Civ. P. 26(c) ("A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending."). Thus, the timing of Defendants' request for a stipulated protective order does not, by itself, warrant revocation of the protective orders that are already in place.

Plaintiff also argues that Defendants have improperly utilized the protective orders to designate documents on a blanket-wide basis. (ECF No. 49 at 9.) "Blanket protective orders are routinely entered in civil litigation, generally at the joint request of the parties where discovery involves confidential information," and are intended "to facilitate the exchange of discovery documents. [Blanket protective orders] make no findings that a particular document is confidential or that a document's disclosure would cause harm." *Acosta v. Heritage*, 332 F.R.D. 347, 349 (D. Haw. 2019). Thus, that blanket protective orders have been entered and/or that Defendants are making blanket designations thereunder do not provide a basis for revoking the protective orders.

Plaintiff argues that it has complied with the challenge procedures set out in the stipulated protective orders by providing Defendant City with detailed correspondence explaining the basis for his challenge to Defendants' confidentiality designations. Plaintiff contends that Defendant City has, however, failed to comply with the challenge procedures and has, instead, stated only that it "disagrees" and that it "will provide our analysis for our position in the moving

papers. . . ." (ECF No. 49 at 9.) The Court does not find Defendants' purported failures to comply with the challenge procedures to be a sufficient reason to revoke the protective orders.

Finally, Plaintiff argues that Defendants have failed to demonstrate the good cause required to designate documents subject to a protective order. (ECF No. 49 at 9.) Specifically, Plaintiff contends that Defendants have failed to demonstrate a "particularized harm"; that the balancing of interests favors disclosure; and that, even if a protective order is appropriate, it should only cover narrow limited categories as opposed to the entire documents designated by the City. (ECF No. 49 at 9-13.)

The Court previously granted Plaintiff permission to file a motion challenging designation of particular IA documents as confidential. (ECF No. 41.) However, Plaintiff appears to, instead, be raising a general challenge to Defendants' designation of officer personnel files, including IA investigation files, as protected under Federal Rule of Civil Procedure 26(c). All of this information has already been disclosed to Plaintiff subject to the protective order. Thus, disclosure to Plaintiff is not at issue here. Instead, the issue is whether this information should be disclosed to the public. Resolution of this issue will not result in, and does not support, wholesale revocation of the stipulated protective orders. Accordingly, to the extent Plaintiff relies on this issue to support revocation of the stipulated protective orders, that reliance is misplaced.

The Court will deny Plaintiff's request to revoke the stipulated protective orders.

## VIII. MOTION FOR PUBLIC DISCLOSURE OF OFFICER PERSONNEL AND IA FILES

Plaintiff seeks an order allowing disclosure to the public of officer personnel files, including IA files, that are currently deemed confidential under the stipulated protective orders.

"Historically, courts have 'recognize[d] a general right to inspect and copy public records and documents, including judicial records and documents." *Oliner v. Kontrabecki*, 745 F.3d 1024, 1025 (9th Cir. 2014) (quoting *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978)). "[J]udicial records are public documents almost by definition, and the public is entitled to access by default." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1180-81 (9th Cir. 2006). This "federal common law right of access" to court documents generally extends to "all information

filed with the court," and "creates a strong presumption in favor of access to judicial documents which can be overcome only by showing sufficiently important countervailing interests." *Phillips ex. Rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1212 (9th Cir. 2002) (citations and quotation marks omitted).

Here, Defendants claim the officer personnel files, including the IA files, are subject to the official information privilege.

The "common law governmental privilege (encompassing and referred to sometimes as the official or state secret privilege) . . . is only a qualified privilege, contingent upon the competing interests of the requesting litigant and subject to disclosure. . . ." *Kerr v. U.S. Dist. Ct. for N. Dist. of Cal.*, 511 F.2d 192, 198 (9th Cir. 1975) (internal citations omitted). The Ninth Circuit has since followed *Kerr* in requiring *in camera* review and a balancing of interests in ruling on the government's claim of the official information privilege. *See, e.g., Breed v. U.S. Dist. Ct. for N. Dist. of Cal.*, 542 F.2d 1114, 1116 (9th Cir. 1976) ("[A]s required by *Kerr*, we recognize 'that in camera review is a highly appropriate and useful means of dealing with claims of governmental privilege.'") (quoting *Kerr v. U. S. Dist. Ct. for N. Dist. of Cal.,* 426 U.S. 394, 406 (1976)); *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033-34 (9th Cir. 1990), *as amended on denial of reh'g* (Feb. 27, 1991), *as amended on denial of reh'g* (May 24, 1991) ("Government personnel files are considered official information. To determine whether the information sought is privileged, courts must weigh the potential benefits of disclosure against the potential disadvantages. If the latter is greater, the privilege bars discovery.") (internal citations omitted).

However, under California Penal Code § 832.7, effective January 1, 2019, certain peace officer personnel records are no longer confidential and are to be made available for public inspection. Personnel records disclosable to the public include those records relating to the report, investigation, or findings of "(i) An incident involving the discharge of a firearm at a person by a peace officer or custodial officer"; or "(ii) An incident in which the use of force by a peace officer or custodial officer against a person resulted in death, or in great bodily injury." Cal. Penal Code § 832.7(b)(1)(A). Also disclosable to the public are personnel records,

relating to an incident in which a sustained finding was made by any law

enforcement agency or oversight agency of dishonesty by a peace officer or custodial officer directly relating to the reporting, investigation, or prosecution of a crime, or directly relating to the reporting of, or investigation of misconduct by, another peace officer or custodial officer, including, but not limited to, any sustained finding of perjury, false statements, filing false reports, destruction, falsifying, or concealing of evidence.

Cal. Penal Code § 832.7(b)(1)(C).

The types of records subject to disclosure under § 832.7(b)(1) include,

all investigative reports; photographic, audio, and video evidence; transcripts or recordings of interviews; autopsy reports; all materials compiled and presented for review to the district attorney or to any person or body charged with determining whether to file criminal charges against an officer in connection with an incident, or whether the officer's action was consistent with law and agency policy for purposes of discipline or administrative action, or what discipline to impose or corrective action to take; documents setting forth findings or recommended findings; and copies of disciplinary records relating to the incident, including any letters of intent to impose discipline, any documents reflecting modifications of discipline due to the Skelly or grievance process, and letters indicating final imposition of discipline or other documentation reflecting implementation of corrective action.

Cal. Penal Code § 832.7(b)(2).

"If an investigation or incident involves multiple officers, information about allegations of misconduct by, or the analysis or disposition of an investigation of, an officer shall not be released pursuant to subparagraph (B) or (C) of paragraph (1), unless it relates to a sustained finding against that officer." Cal. Penal Code § 832.7(b)(4). "However, factual information about that action of an officer during an incident, or the statements of an officer about an incident, shall be released if they are relevant to a sustained finding against another officer that is subject to release pursuant to subparagraph (B) or (C) of paragraph (1)." *Id.* Further, prior to disclosure of personnel records, certain information must be redacted. *See* Cal. Penal Code § 832.7(b)(5). There are also some exceptions to the disclosure requirement, including, for example, when there are pending related criminal charges. *See, e.g.,* Cal. Penal Code § 832.7(b)(6)-(8).

Here, Defendants argue that public disclosure of officer personnel files, including the IA investigation files, would violate the privacy interests of defendant officers as well as the privacy interests of non-defendant officers, witnesses, victims, and other complainants. Defendants have

also submitted evidence that public disclosure of the IA files would negatively impact future IA investigations, including the willingness of witnesses and victims to cooperate in future investigations, and the morale and privacy interests of the officers named in the investigations.

Defendants have not, however, addressed the applicability of California Penal Code § 832.7 or explained why the personnel and IA files are not subject to disclosure under this provision, with appropriate redactions.

Plaintiff also does not address the applicability of California Penal Code § 832.7, but instead merely seeks a broad ruling from the Court that all of the personnel files, including the IA files, should be disclosed to the public. Plaintiff contends that any privacy interest in these files is outweighed by the presumption of public access.

Plaintiff cites to the case of *Rodrique v. County of Sacramento*, E.D. Cal. Case No. 2:17-cv-02698-WBS-EFB, stating that this case is instructive. (ECF No. 49 at 10.) Specifically, Plaintiff states that after the *Rodrique* case was settled, the plaintiff's counsel in that case "successfully obtained the release of the [IA] documents from the terms of the stipulated protective order." (*Id.*) However, a review of the orders issued in the *Rodrique* case demonstrates that the *Rodrique* court rejected the challenge to the protective order's designation of documents as "confidential," and ordered the plaintiff in that case to comply with the provisions of the protective order, which required that the plaintiff either destroy or return the confidential documents disclosed under the protective order. *See Rodrique*, Order After Hearing (Aug. 6, 2019) (*Rodrique* ECF No. 58). A stipulated order was later entered in the *Rodrique* case that allowed intervenor *The Sacramento Bee* to have access to and publish a one-page high-level summary of use-of-force incidents. However, this high-level summary provided only the date of the incidents, the IA numbers, the alleged injuries, in a few instances the names of the involved officer(s), the finding of the IA investigations, and the discipline imposed in those investigations where the charge of excessive force was sustained. (*See Rodrique* ECF No. 74 (Stipulation and Order Modifying Protective Order (entered Oct. 16, 2019); *Rodrique* ECF No. 50-15 (one-page summary).) The stipulated order did not allow release of entire IA files.

Plaintiff also cites *Macias v. Cleaver*, No. 1:13-CV-01819-BAM, 2016 WL 3549257, at

*4-*6 (E.D. Cal. June 30, 2016). In that case, the court allowed public disclosure of IA investigation reports where those reports determined that the defendant officer had engaged in misconduct and the investigation resulted in a recommendation to terminate the defendant officer. *Id.* In allowing this disclosure, the court found that the defendants had failed to provide specific facts demonstrating compelling reasons that overcame the presumption of public access. *Id.* The court ordered the IA investigation reports unsealed, requiring only limited redactions to protect privacy interests. *Id.* at *6. Thus, the disclosure in *Macias* was only of IA investigations in which the officer was found to have engaged in misconduct and resulted in a recommendation that the officer be terminated.

Here, the Court cannot determine, based on the information currently before it, whether the subject personnel and IA files are subject to public disclosure under Cal. Penal. Code 832.7. Further, even if the files are not subject to disclosure under § 832.7, the information before the Court is insufficient for the Court to determine whether there is a compelling reason to keep the files confidential.

The Court will overrule Defendants' objections to the public disclosure of these files based only on the official information privilege. The Court will, however, grant Defendants leave to file, within forty-five days of the date this order is entered, a motion seeking to keep specific officer personnel and IA files confidential and/or proposing redactions to such files prior to public disclosure. Defendants shall also, in conjunction with the filing of such motion, submit for *in camera* review the documents Defendants seek to keep confidential. Plaintiff may file an opposition within fourteen days following the filing of Defendants' motion. The Court will require the parties to maintain the confidentiality of the files until said motion has been resolved by the Court. In the event Defendants fail to timely file a motion seeking to keep specific officer personnel and IA files confidential, the documents may be disclosed to the public, with such disclosure to be made in compliance with the redaction and other requirements of state and federal law, including California Penal Code § 832.7.

////

////

## IX.  MOTION FOR AN AWARD OF EXPENSES

Federal Rule of Civil Procedure 37 provides that if a motion to compel is granted, or if the disclosures or requested discovery is provided after the filing of the motion, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). However, the court "must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust."

Here, Plaintiff seeks an award of expenses incurred in bringing the motion to compel. (ECF No. 49 at 13-15.) In support, Plaintiff contends that Defendants "interposed numerous unsupported, unexplained, and generalized boilerplate objections in violation of Fed. R. Civ. P. 26(g)"; withheld responses without seeking a protective order; did not timely respond to Plaintiff's discovery requests and instead produced documents on a rolling basis (over Plaintiff's objections); and only produced responsive documents after it became clear that they would be compelled to do so. (*Id.*)

Defendants do not deny any of Plaintiff's contentions, stating only that "Defendants recognize this court's inherent power and authority to award expenses, attorney's fees, and sanction parties and attorneys. Defendants respectfully request that this court not award[] any expenses, attorney's fees, or sanctions." (ECF No. 49 at 27.)

As set forth above, the Court is granting Plaintiff's motion to compel. Defendants have repeatedly failed to timely respond to Plaintiff's discovery requests, failed to provide complete responses to Plaintiff's discovery requests, and failed to provide the certification required under Federal Rule of Civil Procedure 26(g)(1).

The Court also finds that Plaintiff made a good faith attempt to obtain discovery from Defendants without the Court's intervention but was unable to do so, and that Defendants' conduct thus necessitated Court intervention. Defendants have also failed to provide any

substantial justification for their failures to timely and appropriately respond to Plaintiff's discovery requests. Finally, Defendants have not provided the Court with any information indicating that an award of expenses against them would be unjust. Accordingly, the Court will award Plaintiff expenses incurred in bringing the motion to compel, including attorney's fees.[1]

## X. REQUEST FOR SANCTIONS: DISCOVERY MISCONDUCT

Finally, Plaintiff seeks to have sanctions imposed on Defendant City for general discovery misconduct. Plaintiff argues,

> Despite herculean efforts to avoid the filing of these motions, Plaintiff was left with no choice based on Defendant City and its counsel's repeated efforts to delay and obstruct the discovery process. Counsel's unprofessional behavior took many forms, including difficulty and delay in crafting the joint statement, itself. As a result of this misconduct, Plaintiff's counsel was forced to expend substantial efforts over the course of eight months to extract the discovery to which Plaintiff was undisputedly entitled. Defendant City and its counsel's conduct was inconsistent with the "self-executing' process that is meant to be discovery and, as a result, they should be sanctioned in an amount commensurate with the misconduct.

(ECF No. 49 at 15.)

Defendants respond as follows:

> This court wisely and previously cautioned the parties to act civilly during discussions in this matter, and no incidents of incivility have occurred since the admonishment. Counsel for Defendants considers the referenced phone call to be a moot issue.
>
> Counsel for Defendant disagrees with prior assertions that he has been "unprofessional, dishonest, and obstructive," and respectfully asks this court to exercise its discretion and not award sanctions.

(ECF No. 49 at 27.)

As to Defendant's reference to a phone call, Plaintiff does not specifically reference any phone call. Presumably, the phone call at issue is the one addressed during the previous, informal discovery dispute conference and Plaintiff has not again specifically raised it.

As to Plaintiff's request for general sanctions, the Court will deny that request. The Court is troubled by Defendants' ongoing and repeated failures to provide timely and complete discovery responses, and failure to generally comply with the Federal Rules of Civil Procedure governing discovery, as detailed above. The Court also acknowledges that Plaintiff sought to

---

[1] The Court will not award fees for the preparation and filing of the non-compliant, 148-page joint statement of discovery dispute. (*See* ECF Nos. 46, 47.)

resolve discovery issues without seeking Court interference but notes that the appropriate remedy for a party's ongoing failure to comply with discovery is a motion to compel following the procedure the Court has set out in its Scheduling Order. The imposition of general discovery sanctions is not warranted here.

## XI.    CONCLUSION

Based on the foregoing, IT IS ORDERED that Plaintiff's motion to compel and for other discovery relief (ECF No. 44) is GRANTED in part and DENIED in part as follows:

1.    Within **forty-five (45) days** following entry of this Order, Defendants shall:

a.    As to each of Plaintiff's discovery requests: (1) double-check for information in Defendants' possession, custody, or control that is responsive to the discovery request; (2) produce any newly-found responsive documents; and (3) submit a verification that both explains the steps taken to conduct the double-check and certifies that all responsive documents have been provided.

b.    As to Defendants' November 27, 2019, response to discovery: Reproduce the November 27, 2019, discovery response to comply with Federal Rule of Civil Procedure Rule 34(b)(2)(E). To the extent Plaintiff seeks to have Defendants produce the documents in a manner other than as required by Rule 34(b)(2)(E), Plaintiff must seek and obtain a stipulation from Defense counsel for such production.

c.    As to the 2017 performance review of Defendant Ramar and any other information responsive to Plaintiff's RPD No. 7: (1) double-check for information in Defendants' possession, custody, or control that is responsive to this discovery request and specifically search on the City's computers, servers, and other locations within the City's possession, custody, or control; (2) produce any newly-found responsive documents; and (3) submit a verification that both explains the steps Defendants took to conduct the double-check and certifies that all responsive documents have been provided.

d. As to RPD No. 14, seeking Defendant Ramar's former testimony: (1) double-check for information in Defendants' possession, custody, or control that is responsive to this discovery request, and specifically search the City's computers, servers, archived documents, and other locations within the City's possession, custody, or control, including court records from previous cases in which Defendant Ramar has testified; (2) produce any responsive documents; and (3) submit a verification that both explains the steps Defendants took to conduct the double-check and certifies that all responsive documents have been provided. If information responsive to RPD No. 14 is unavailable because the information has been destroyed by or with the permission of Defendants, an explanation as to such destruction shall be included in the verification. If former counsel for Defendants in *Holcomb v. Ramar* has indicated that responsive information is not available, Defendants shall provide the name of the attorney who so indicated along with an explanation from that attorney as to why the information is no longer available.

e. As to RPD Nos. 59, 60, 61, 62, and 63, seeking *Monell* discovery related to prior litigation in *Rodriguez v. City of Modesto*, E.D. Cal. Case 1:10-cv-01370-LJO-MJS; *Olvera v. City of Modesto*, E.D. Cal. Case 1:11-cv-00540-AWI-GSA; *Reed v. City of Modesto*, E.D. Cal. Case 1:11-cv-01083-AWI-GSA; *Mugrauer v. City of Modesto*, E.D. Cal. Case No. 1:16-cv-00480-AWI-SAB; and *Schmidt v. City of Modesto*, E.D. Cal. Case No. 1:17-cv-01411-DAD-MJS: (1) double-check for information in Defendants' possession, custody, or control that is responsive to these discovery requests, and specifically search the City's computers, servers, archived documents, and other locations within the City's possession, custody, or control; (2) produce any responsive documents; and (3) submit a verification that both explains the steps Defendants took to conduct the double-check and certifies that all responsive documents have been provided. If information responsive to RPD Nos. 59, 60, 61, 62, or 63, is unavailable because the information has been

destroyed by or with the permission of Defendants, an explanation as to such destruction shall be included in the verification. If former counsel for Defendants in the cases referred to in RPD Nos. 59, 60, 61, 62, and 63, has indicated that responsive information is not available, Defendants shall provide the name of the attorney(s) who so indicated along with an explanation from that attorney(s) as to why the information is no longer available.

    f.  As to RPD No. 61, final production of all responsive documents shall be completed **within forty-five (45) days** of the date this order is entered. If Defendants have not provided all documents responsive to RPD No. 61 within forty-five (45) days of the date this order is entered, unless this deadline is extended by the Court in response to a motion, the Court will sanction Defendants $100 for each day the responsive documents are impermissibly withheld. If Defendants believe a protective order is needed, and are unable to obtain a stipulation from Plaintiff, they must file an expedited motion seeking a protective order.

    g.  As to any other documents Defendants have withheld because there is not a protective order covering such documents, final production of all of these responsive documents shall be completed **within forty-five (45) days** of the date this order is entered. If Defendants believe a protective order is needed, and are unable to obtain a stipulation from Plaintiff, they must file an expedited motion seeking a protective order.

   2.  Plaintiff is granted leave to request, **within forty-five (45) days** after entry of this order, that Defendants provide a declaration and/or appear for a Federal Rule of Civil Procedure 30(b)(6) deposition on efforts Defendants have taken to search for information responsive to Plaintiff's discovery request(s). Defendants are directed to comply with any such request from Plaintiff.

   3.  The Court finds spoliation by the City of Modesto/Modesto Police Department of ESI from the cell phone that was issued to Defendant Ramar, and prejudice resulting from the loss of

that ESI. The Court leaves to the trial judge the determination of the measures necessary to cure the prejudice resulting from the loss of the ESI.

    4.   Plaintiff's motion to revoke the stipulated protective orders is DENIED.

    5.   The Court overrules Defendants' objections to the public disclosure of officer personnel and IA files. Defendants may file, within **forty-five (45) days** of the date this order is entered, a motion not to exceed ten (10) pages in length seeking to keep specific officer personnel and IA files confidential and/or proposing redactions to such files prior to public disclosure. In conjunction with the filing of such motion, Defendants shall also submit for *in camera* review the documents Defendants seek to keep confidential.[2] Plaintiff may file, within **fourteen (14) days** of the filing of Defendants' motion, an opposition that is not to exceed ten (10) pages in length. The Court will require the parties to maintain the confidentiality of the files until said motion has been resolved by the Court. In the event Defendants fail to timely file a motion seeking to keep specific officer personnel and IA files confidential, the documents may be disclosed to the public, with such disclosure to be made in compliance with the redaction and other requirements of federal and state law, including California Penal Code § 832.7.

    6.   Plaintiff's motion for expenses for filing the motion to compel is GRANTED. Plaintiff is directed to file a bill of costs and an accounting of attorneys' fees.[3]

    7.   Plaintiff's motion for general sanctions for discovery misconduct is DENIED.

IT IS SO ORDERED.

Dated:   **March 20, 2020**        /s/ *Erica P. Grosjean*
                                   UNITED STATES MAGISTRATE JUDGE

---

[2] Defendants may submit documents for *in camera* review by mailing them to the attention of Magistrate Judge Erica P. Grosjean at the following address:

        Clerk of the U.S. District Court for the Eastern District of California
        2500 Tulare Street
        Fresno, California 93721

[3] Again, the Court will not award expenses for the preparation and filing of the non-compliant joint statement of discovery dispute.