UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON B. PERKINS,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF MODESTO, et al.,<br><br>    Defendants. | Case No. 1:19-cv-00126-LJO-EPG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PROTECTIVE ORDER**<br><br>(ECF No. 60) |

Pending before the Court is Defendants' Motion for Protective Order (ECF No. 60). Defendants seek a protective order with respect to certain police officer personnel and internal affairs investigation ("IA") files. For the reasons discussed below, the Court grants in part and denies in part the motion.

## BACKGROUND

**A.**     **Allegations of Amended Complaint**

Plaintiff filed this civil rights action on January 29, 2019 (ECF No. 1) and filed an amended complaint on June 13, 2019 (ECF No. 22). The amended complaint alleges the following:

On November 6, 2017, Plaintiff drove his significant other, Shannon Agnitsch, to the bank and waited in his vehicle, sitting in the driver's seat in the bank's parking lot while Ms. Agnitsch entered the bank. Plaintiff's vehicle was approached by Defendants Jerry J. Ramar and Ryan Olson, on-duty police officers with the Modesto Police Department ("MPD"). Plaintiff was not

1

aware that these officers had approached his vehicle. Officer Ramar unholstered and fired his MPD-issued firearm at Plaintiff without warning and without provocation, shooting at Plaintiff and Plaintiff's vehicle. Officer Ramar shot at Plaintiff approximately six times, including in the face, chest, left arm, and left shoulder. Officer Olson stood by as Officer Ramar shot Plaintiff, without protesting or intervening, despite the opportunity to do so.

Plaintiff required life-saving medical treatment at the scene of the shooting and was transported to the hospital for further treatment, including several surgeries. Plaintiff remained in critical condition for two weeks following the shooting. Plaintiff still has three bullets and/or metal jackets lodged inside his body and has been advised the removal of these remaining bullets/metal jackets would be dangerous. Plaintiff has also undergone two additional surgeries since the shooting and expects that at least a few more surgeries will be needed in the future. His resulting injuries have left him with paralysis in his left hand, right arm, and face.

On June 28, 2018, Plaintiff submitted a citizen complaint form to Modesto Police Department, alleging misconduct in connection with the November 6, 2017, officer-involved shooting of Plaintiff. On December 18, 2018, the MPD Shooting Review Board, concluded that Officer Ramar's discharge of his firearm against Plaintiff was "within policy," and, as a result that the allegations in Plaintiff's citizen complaint form were "Unfounded."

On January 29, 2019, Plaintiff filed this action, naming as defendants the City of Modesto, the Modesto Police Department, Galen L. Carroll, Officer Jerry J. Ramar, and Officer Ryan Olson. (ECF No. 1.) Plaintiff brings claims for use of unreasonable force in violation of the Fourth and Fourteenth Amendments of the U.S. Constitution; and California state law claims of unreasonable force, assault and battery, intentional infliction of emotional distress, negligence, and violation of the Bane Act.

**B.    Stipulated Protective Orders and Officer Personnel and IA Files**

On August 6, 2019, the parties filed a stipulation for a protective order (ECF No. 28), and the Court entered the first stipulated protective order on August 6, 2019 (ECF No. 29). On September 9, 2019, the parties filed a second stipulation for a protective order (ECF No. 32) and the Court entered the second stipulated protective order on September 10, 2019 (ECF No. 33).

On January 3, 2020, after receiving permission from the Court, Plaintiff filed a discovery motion seeking, among other things, a court order allowing disclosure to the public of officer personnel and IA files that were deemed confidential under the previously entered stipulated protective orders. (ECF No. 44.) Defendants objected to the request for disclosure of these personnel and IA files. Defendants argued that the files are subject to the official information privilege. Defendants did not, however, address the applicability of California Penal Code § 832.7, under which certain peace officer personnel records are no longer confidential under state law and are to be made available for public inspection, with required redactions.

On March 23, 2020, the Court entered an order in which it overruled Defendants' objections to the public disclosure of officer personnel and IA files. (ECF No. 57 at 30-34.) The Court noted that it was unable to determine, based on the information that was before it, whether the personnel and IA files at issue are subject to public disclosure under California Penal Code § 832.7 and, even if not subject to public disclosure under § 832.7, whether there was another compelling reason to keep the files confidential. (ECF No. 57 at 34.) However, the Court granted Defendants leave to file a motion seeking to keep specific officer personnel and IA files confidential and/or proposing redactions to such files prior to public disclosure. The Court also directed Defendants to submit for *in camera* review the documents Defendants seek to keep confidential. (ECF No. 57.)

On May 7, 2020, Defendant filed a motion for protective order. (ECF No. 60.) Defendant also submitted for *in camera* review those documents Defendants seek to keep confidential. Plaintiff opposes the motion for protective order. (ECF No. 62.)

**DISCUSSION**

Federal Rule of Civil Procedure 26(c), which sets forth the grounds for protective orders, "was enacted as a safeguard for the protection of parties and witnesses in view of the broad discovery rights authorized in Rule 26(b)." *United States v. Columbia Broad. Sys., Inc.*, 666 F.2d 364, 368-69 (9th Cir. 1982). "Generally, the public can gain access to litigation documents and information produced during discovery unless the party opposing disclosure shows 'good cause' why a protective order is necessary." *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307

F.3d 1206, 1210 (9th Cir. 2002). To satisfy this "good cause" standard, the party seeking a protective order must explain the specific prejudice or harm that will result if the information is not protected. *Id.* at 1211.

Here, Defendants seek a protective order with regard to certain officer personnel and IA files. Defendants do not seek to prevent disclosure of these files to Plaintiff. Indeed, those files have already been provided to Plaintiff. Instead, Defendants merely seek to maintain the privacy of certain officer personnel and IA files that are not required to be disclosed under California Penal Code § 832.7. (ECF No. 60-1 at 2.)

**A.  Previously disclosed documents designated as confidential for which Defendant is waiving the confidential designation subject to redaction – uncontested documents.**

Defendants are affirmatively waiving confidentiality of the following documents on the condition that certain information is redacted from the documents prior to disclosure: FD 014-002; FD 015-002; FD 015-003; FD 015-004; FD 016-001; FD 016-003; FD 016-005; FD 016-006; FD 017-001; FD 017-002; IA 13-019; IA 15-011; IA 16-048; IA 17-003; and IA 18-028.

Defendants explain that unredacted versions of these documents have already been produced to Plaintiff but were designated by Defendant as confidential under the protective orders. Defendants concede that these documents are required to be produced if requested under the California Public Records Act. Thus, Defendants agree to designate these documents as non-confidential as long as certain information is redacted as permitted under California Penal Code § 832.7(b)(5). (ECF No. 60-1 at 2.)

Under § 832.7(5), officer personnel records and other records maintained by state and local agencies that are subject to disclosure to the public must have specified information redacted prior to such disclosure:

> (5) An agency shall redact a record disclosed pursuant to this section only for any of the following purposes:
>
> (A) To remove personal data or information, such as a home address, telephone number, or identities of family members, other than the names and work-related information of peace and custodial officers.
>
> (B) To preserve the anonymity of complainants and witnesses.
>
> (C) To protect confidential medical, financial, or other information of which

4

> disclosure is specifically prohibited by federal law or would cause an unwarranted invasion of personal privacy that clearly outweighs the strong public interest in records about misconduct and serious use of force by peace officers and custodial officers.

Cal. Penal Code § 832.7(5)(A)-(C).

The personnel and IA files that Defendants have agreed to disclose and deem non-confidential are subject to this redaction requirement. Accordingly, the Court will grant Defendant's request that the Court's order require redaction of these documents prior to disclosure.

**B.  Previously disclosed documents designated as confidential for which Defendant seeks to maintain the confidential designation – contested documents.**

Defendants seek to keep the following officer personnel and IA files confidential: IA13-025; IA-031; IA14-030; IA14-045; IA14-052; IA15-001; IA15-031; IA15-036; IA15-044; IA16-015; IA16-028; IA16-034; IA16-035; IA16-036; IA16-038; IA16-043; IA17-002; IA17-018; IA17-019; IA17-037; IA17-039; IA17-054; IA18-003; IA19-005; IA19-020; IA19-022; IA19-023; IA19-024; the personnel file of Officer Jerry Ramar; and the personnel file of Officer Ryan Olson. (ECF No. 60-1 at 3, 4-8.) Defendants argue that these documents are not subject to disclosure under § 832.7. Specifically, Defendants contend that these personnel and IA files do not involve officer-involved shootings, the use of force resulting in death or great bodily injury, a sustained finding of a sexual assault by an officer, or a sustained finding of dishonesty by an officer, and thus are not subject to § 832.7's exception to the general confidentiality of these files. (ECF No. 60-1 at 3 (citing Cal. Penal Code § 832.7(b)(1)(A) - (C)).) Defendant has submitted these documents for *in camera* review by the Court.

Plaintiff opposes the designation of these documents as confidential. Plaintiff disputes that Defendants have accurately or fairly summarized the incidents at issue in these files as falling outside of § 832.7's disclosure requirements and, specifically, contends that Defendants provide no basis for their designations of no "great bodily injury" as to any particular record. (ECF No. 62 at 6.)

As already noted, Defendants submitted the files to the Court for *in camera* review so that the Court could determine whether the files were subject to disclosure under § 832.7 or should

otherwise be deemed confidential. The Court has now reviewed those files and, based on that review, finds that none of the files involve the use of force resulting in death or "great bodily injury," as defined by the California Penal Code as "a significant or substantial physical injury." Cal. Penal Code § 12022.7(f). Nor do the files involve shootings, a sustained finding of sexual assault by an officer, or a sustained finding of dishonesty by an officer. Accordingly, the files are not subject to disclosure under § 832.7.

Plaintiff also argues that, even assuming that the files are not subject to disclosure under § 832.7, this determination is irrelevant because the scope of disclosure is governed by federal, not state, law. (ECF No. 62 at 6-7.)

In the Ninth Circuit, to determine whether to maintain the confidential designation of the documents that are subject to a protective order, the Court is to engage in a two-part test. First, the Court "must determine whether particularized harm will result from disclosure of information to the public." *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011) (citation and quotation marks omitted). "Second, if the court concludes that such harm will result from disclosure of the discovery documents, then it must proceed to balance the public and private interests to decide whether [maintaining] a protective order is necessary." *Id.* (citation and quotation marks omitted) (alteration in original). This balancing test requires the Court to consider the following factors:

> 1) whether disclosure will violate any privacy interests;
> 2) whether the information is being sought for a legitimate purpose or for an improper purpose;
> 3) whether disclosure of the information will cause a party embarrassment;
> 4) whether confidentiality is being sought over information important to public health and safety;
> 5) whether the sharing of information among litigants will promote fairness and efficiency;
> 6) whether a party benefitting from the order of confidentiality is a public entity or official; and
> 7) whether the case involves issues important to the public.

*Glenmede Trust Co. v. Thompson,* 56 F.3d 476, 483 (3d Cir.1995); *see In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d at 424 ("We have directed courts doing this balancing [of public and private interests] to consider the factors identified by the Third Circuit in *Glenmede Trust Co. v. Thompson,* 56 F.3d 476, 483 (3d Cir.1995).).

Here, as noted, the Court has conducted an *in camera* review of the officer personnel and IA files that Defendants seek to keep confidential. Based on that review, the Court finds that particularized harm will result from disclosure of these files to the public. *See In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d at 424. Specifically, these files contain private information regarding officers and reporting parties, and the disclosure of these files will violate privacy interests and lead to potential embarrassment of the officers and reporting parties.

Moving on to the second step, the balancing of the public and private interests, the Court examines the personnel files of the officers separately from the IA files.

As to the officer personnel files, the Court finds that the disclosure of this information will violate the officers' privacy interests and will potentially cause the officers embarrassment and annoyance. The Court finds that these factors weigh heavily against disclosure of the personnel files. The officers seeking to prevent disclosure are public officials, and this factor weighs in favor of public disclosure. The Court finds that some information in officer personnel files might be important to public health and safety but that the sharing of the information among litigants outside of this proceeding will not promote fairness and efficiency. Finally, although this case involves issues important to the public, the Court does not find that the officer personnel files themselves involve issues important to the public. In balancing all of these factors, the Court finds that the private interests in these personnel files far outweigh the public interests.

As to the IA files, the Court finds that the disclosure of this information will violate the privacy interests of, and potentially cause embarrassment and annoyance of, both the reporting parties and the officers, and that these factors weigh heavily against disclosure of these files. Although the officers are public officials, the reporting parties are not, and the Court finds this factor weighs against disclosure. The Court finds that the some of these files may involve issues important to the public.[1] The Court recognizes that this case involves issues important to the public but notes that the IA files are not related to this case. Finally, the Court finds that the sharing of the information from these unrelated IA files among litigants outside of this proceeding

---

[1] For example, this information is important to allow the public to understand what occurs when a complaint is lodged with the MPD, and whether there is follow-up and investigation as a result of a complaint.

7

will not promote fairness and efficiency. In balancing all of these factors, the Court finds that the private interests in the IA files far outweigh the public interests.

In sum, the Court finds that there is not a heightened public interest in seeing either the personnel files or the IA files, and that the private interests in these files far outweigh the public interest in disclosure. In making this finding, the Court notes that its finding is consistent with that of the State of California which, in balancing competing public and private interests, determined that files like the subject IA and personnel files should not be disclosed to the public. *See* Cal. Penal Code § 832.7(b); *Becerra v. Superior Court*, 257 Cal. Rptr. 3d 897, 925-28 (Ct. App. 2020), *review denied* (May 13, 2020) (noting the California legislature's intent to balance public and private interests in amending the police personnel records statute).

The Court finds the cases cited by Plaintiff in support of disclosure to be unpersuasive or inapposite.

In *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994), the district court issued a protective order requiring that a settlement agreement be kept confidential. After judgment was entered, a non-party newspaper sought access to the settlement agreement and therefore challenged the district court's protective order. The district court denied the newspaper's motion to reconsider the protective order, and the newspaper appealed. On appeal, the Third Circuit found that the district court failed to make any findings for the record when it initially granted the protective order and "apparently did not balance the competing public and privacy interests before entering the Order." *Id.* at 786. The Third Circuit then went on to examine whether good cause existed for keeping the protective order in place. *Id.* at 786-87. The Third Circuit noted that the settlement agreement would, but for the confidentiality order, likely be accessible under the state's freedom of information laws. The court explained:

> This case thus illustrates how confidentiality orders can frustrate, if not render useless, federal and state freedom of information laws. When a court orders confidentiality in a suit involving a governmental entity, as the district court in this case did, there arises a troublesome conflict between the governmental entity's interest as a litigant and its public disclosure obligations.

*Id.* at 791 (footnote omitted). Because the district court had not made any findings for the record,

had not conducted a balancing test before issuing the protective order, and had not explained why the newspaper's interest in obtaining access to the settlement agreement under the state freedom of information act was outweighed by the need for confidentiality, the Third Circuit remanded to the district court for further proceedings. *Id.* at 792.

*Pansy* is inapposite. In contrast to the *Pansy* case, the Court has engaged in a balancing test regarding the documents and found that the private interests far outweigh the public interests. In addition, as also discussed above, these documents are not subject to disclosure under state law, and specifically under California Penal Code § 832.7, and thus the Court is not frustrating the purpose of state freedom of information law. Finally, at issue here are discovery documents that do not relate to the present case, not a settlement document resolving the case.

In *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006), at issue were documents that were part of the judicial record. Although a protective order may be issued based on a showing of good cause, a higher standard applies if a party seeks to keep records that become part of the judicial record confidential. As the Ninth Circuit explained:

> Historically, courts have recognized a general right to inspect and copy public records and documents, including judicial records and documents. . . .
>
> . . . .
>
> Unless a particular court record is one traditionally kept secret, a strong presumption in favor of access is the starting point. A party seeking to seal a judicial record then bears the burden of overcoming this strong presumption by meeting the compelling reasons standard. That is, the party must articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process.

*Kamakana*, 447 F.3d at 1178-79 (citations, quotation marks, and alteration marks omitted).

*Kamakana* is inapposite because the documents at issue there were not merely discovery documents but were instead documents that had become part of the judicial record and were therefore subject to the higher standard for retaining confidentiality. In the present case, in contrast, the documents at issue are not part of the judicial record and are therefore not subject to the heightened standard.

In *Wiggins v. Burge*, 173 F.R.D. 226 (N.D. Ill. 1997), the plaintiff had requested and received discovery of investigative files of various officers under a protective order requiring the

9

documents be kept confidential. *Id.* at 227-28. The plaintiff in the case alleged that officers had tortured him, and the specific investigative files at issue in the case also involved allegations of police torture. *Id.* at 227. After the case settled, the plaintiff and an intervenor moved to strike the confidential designation of some of those files. *Id.* at 228. The district court granted the motion and struck the confidential designation. *Id.* at 230. The court found:

> [P]ublic interest far outweighs any harm to the police officers and thus, there is no good cause to keep the documents confidential. Most of the documents have already been redacted to remove any personal and sensitive information. The defendants have not shown that the privacy interests of the police officers, the alleged chilling effect to internal investigations and the possibility of false allegations outweigh the significant public interest in the disclosure of these documents. The public has a right to know whether allegations of police torture are appropriately investigated and resolved by the City of Chicago

*Id.*

*Wiggins* is inapposite and unpersuasive. In contrast to *Wiggins*, here, the IA files at issue do not involve the same type of conduct alleged by Plaintiff. As discussed above, Plaintiff is alleging excessive force was used against him when the officer shot him. In contrast, the IA files that Plaintiff seeks to disclose to the public do not involve an officer involved shooting or great bodily injury. Instead, the IA files involve other alleged police misconduct unrelated to the case.

In *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470 (9th Cir. 1992), intervenors sought to modify a protective order to allow intervenors to obtain deposition transcripts from a previous case. The district court granted the intervenors' motion and the party seeking to keep the protective order in place appealed. *Id.* at 471-72. On appeal, the Ninth Circuit noted that the district court in the previous case had entered a blanket protective order and that there had never been a showing of good cause as required under Federal Rule of Civil Procedure 26(c). *Id.* at 476. The Ninth Circuit found that the intervenors had shown the transcripts were needed to meet the "'reasonable needs of other parties in other litigation,'" and that it was therefore within the district court's discretion to modify the protective order. *Id.* (citing *Olympic Refining Company v. Carter*, 332 F.2d 260, 264 (9th Cir. 1964)). The district court's order modifying the protective order was therefore affirmed. *Id.* at 476.

*Beckman* is inapposite. Here, Plaintiff has not demonstrated that the subject IA and

personnel files are needed to meet the reasonable needs of other parties in other litigation. Further, the Court is not entering a blanket protective order. To the contrary, the Court has conducted an *in camera* review of the files, has engaged in a balancing test, and has determined that the subject discovery documents should be kept confidential and not disclosed to the public.

In *Leap Sys. V. Moneytrax, Inc.*, 638 F.3d 216, 222 (3d Cir. 2011), the district court had granted a request to seal portions of a settlement conference transcript memorializing the terms of the parties' settlement agreement. In doing so, the district court found that the party seeking to have the transcript sealed had demonstrated that sealing was necessary to protect a legitimate interest in maintaining the confidentiality of sensitive proprietary business information . *Id.* at 219. An intervenor subsequently sought to unseal the record, and the district court denied that request. *Id.* On appeal, the Third Circuit first found that the transcript was a judicial record. *Id.* at 220-21. The Third Circuit then went on to balance the privacy interest and the public's interest in disclosure and concluded that the district court had not abused its discretion in finding that the presumption in favor of public accessibility had been rebutted and accordingly affirmed the district court's denial of the motion to unseal the record. *Id.* at 222-23.

*Leap Sys.* is, like other cases cited by Plaintiff, inapposite. At issue there are portions of a settlement conference transcript that had become part of the judicial record. In contrast, at issue in the present case are discovery documents that are not part of the judicial record. Moreover, in *Leap Sys.*, even though the transcript was part of the judicial record, the Third Circuit upheld the district court's decision, reached after engaging in a balancing of private and public interests, that the transcript should be kept confidential. Similarly, here, the Court has engaged in a balancing of the private and public interests in the files and has determined that the private interests far outweigh the public's interest and that the files should accordingly remain confidential.

In *Humboldt Baykeeper v. Union Pac. R. R.*, 244 F.R.D. 560 (N.D. Cal. 2007), the defendant sought a protective order that would prohibit the plaintiff from disclosing information the plaintiff's specialists acquired during the course of their inspection and testing of the environmentally contaminated property that was the subject of the lawsuit. *Id.* at 561. The district court denied the motion. First, the court found that the defendant did not show the good cause

necessary to overcome the presumption against issuing protective orders under Rule 26(c). *Id.* at 566. The court further found that even if the defendant had shown weightier privacy interests, the court would still need to weigh the competing needs and interests of the parties affected by the discovery, as well as the public's interests. *Id.* (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)). The court found, in conducting the balancing test, "that the balance tips clearly in favor of permitting plaintiffs to disclose the information they gather about the site." *Id.* at 567. "The defendant's privacy interest that could be affected adversely by disclosure is not substantial—while there is a real possibility that permitting the plaintiffs to share the results of their experts' tests and measurements with governmental agencies and other interest groups would contribute appreciably to securing unquestionably important public interests." *Id.* at 567.

*Humboldt Baykeeper* is, like the other cases cited by Plaintiff, inapposite. In that case, the information sought to be protected related directly to the case and the court found that there was not good cause for issuance of a protective order, let alone that the balance between private and public interests weighed in favor of keeping the information confidential. Here, in contrast, the information sought to be protected does not directly relate to the case, the Court has found good cause for a protective order, and further, that the balance of private and public interests weigh heavily in favor of keeping the files confidential.

Finally, Plaintiff cites to *Rodriguez v. County of Sacramento*, Case No. 2:17-cv-02698 (E.D. Cal.). In *Rodriguez*, after the case had settled and was dismissed, non-party intervenor the Sacramento Bee, moved to lift a blanket protective order to allow disclosure of IA files. (No. 2:17-cv-02698, ECF No. 56.) At a hearing, the district court noted that thousands of documents were at issue and indicated agreement with the intervenor that the public would have a right to know about the information at issue—IA files (ECF Nos. 64, 70). There is no indication that the court conducted an *in camera* review of those files. (*See ibid.*) Following the hearing, the defendants and the intervenor reached an agreement and presented the court with a stipulated protective order, which the court signed. (No. 2:17-cv-02698, ECF Nos. 69, 71.) The stipulated protective order allowed for disclosure of the IA files that had been deemed confidential under the previous blanket protective order. (No. 2:17-cv-02698, ECF No. 71.)

In the present case, unlike in *Rodriguez*, the Court has conducted an *in camera* review of the files and has balanced the private and public interests and has found the private interests in keeping the files confidential far outweigh the public interest in disclosure of the files. That the *Rodriguez* court stated during a hearing, and without apparently conducting an *in camera* review, that the IA files at issue in that case should be disclosed to the public does not convince the Court that the IA files at issue in the present case should also be disclosed to the public.

Because the Court has determined, after conducting a balancing test, that the files should be kept confidential, the Court must next consider whether redacting portions of the files will nevertheless allow disclosure. *See In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d at 425. ("But even when the factors in this two-part test weigh in favor of protecting the discovery material (i.e., where the court determines that disclosure of information may result in "particularized harm," and the private interest in protecting the discovery material outweighs the public interest in disclosure), a court must still consider whether redacting portions of the discovery material will nevertheless allow disclosure.").

After a thorough review of both the personnel files and the IA files, the Court finds that the files cannot be redacted in a manner to sufficiently protect privacy interests while leaving in place other meaningful information. Thus, these files will retain their confidential status under the protective orders.

Again, Plaintiff has been provided with a copy of these files, and the Court is only requiring that the files not be disclosed to the public. Further, as previously indicated by the Court, and discussed above, if these or other confidential files are used, for example, in support of a dispositive motion or for trial, there is a much higher standard for keeping the files confidential. *See Kamakana*, 447 F.3d at 1178-79.

Based on the foregoing, IT IS ORDERED that:

1. The following records may be disclosed to the public as long as the appropriate redactions have been made as required by Cal. Penal Code § 832.7 prior to such disclosure: FD 014-002; FD 015-002; FD 015-003; FD 015-004; FD 016-001; FD

016-003; FD 016-005; FD 016-006; FD 017-001; FD 017-002; IA 13-019; IA 15-011; IA 16-048; IA 17-003; and IA 18-028.

2. The following records remain subject to the protective orders previously issued and accordingly retain their confidential designation: IA13-025; IA-031; IA14-030; IA14-045; IA14-052; IA15-001; IA15-031; IA15-036; IA15-044; IA16-015; IA16-028; IA16-034; IA16-035; IA16-036; IA16-038; IA16-043; IA17-002; IA17-018; IA17-019; IA17-037; IA17-039; IA17-054; IA18-003; IA19-005; IA19-020; IA19-022; IA19-023; IA19-024; the personnel file of Jerry Ramar and the personnel file of Ryan Olson remain subject to the protective orders previously issued and accordingly retain their confidential designation.

IT IS SO ORDERED.

Dated:  **August 17, 2020**              /s/ Erica P. Grosjean
                                          UNITED STATES MAGISTRATE JUDGE